**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANGELA ALLEN,                          )
                                   )
       Plaintiff,                     )
                                   )
       v.                             )     Civil No. 3:23-cv-00262
                                   )     Judge Stephanie L. Haines
STATE CORRECTIONAL INSTITUTION       )
AT SOMERSET DEPARTMENT OF             )
CORRECTIONS,                          )
                                   )
       Defendant.                     )

## <u>Opinion</u>

Plaintiff Angela Allen ("Allen") commenced this action on October 19, 2023, filing a four count Complaint, ECF No. 1, against Defendant State Correctional Institution at Somerset Department of Corrections ("SCI Somerset").[1] Therein, Allen raises claims of sex discrimination ("Count I"), hostile work environment ("Count II"), and retaliation ("Count III") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963, in addition to a claim of wrongful termination in violation of public policy ("Count IV"). ECF No. 1.

On January 18, 2024, after the Court issued its Order, ECF No. 8, granting SCI Somerset's Motion for Extension of Time to File an Answer, ECF No. 7, SCI Somerset filed a Motion to Dismiss Allen's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 9, alongside an accompanying Brief in Support. ECF No. 10. Therein, SCI Somerset contends that Allen's claims are barred by issue preclusion[2] because Allen previously litigated these claims

---

[1] Allen filed a timely Complaint within 90 days of receiving a Right to Sue Letter from the EEOC. ECF No. 1-2.
[2] While "[t]he doctrine describing the effect of former adjudications on subsequent actions has a number of aspects, and is referred to by a variety of terms," *Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co., LTD.*, 63

before the Pennsylvania Commonwealth Court, a state court of record. ECF No. 10, pp. 1-2. On March 17, 2024, after the Court issued its Order, ECF No. 14, granting Allen's Motion to Continue, ECF No. 12, Allen filed a Brief in Opposition to the Motion to Dismiss, ECF No. 14, to which SCI Somerset filed a Reply on March 25, 2024. ECF No. 12. The matter is fully briefed and ripe for disposition.

For the reasons set forth below, the Court will GRANT in part and DENY in part SCI Somerset's Motion to Dismiss. ECF No. 9.

## I.    Factual Background[3]

Allen was hired as a correctional officer at SCI Somerset on or about October 10, 2020. ECF No. 1, ¶ 8. Allen sets forth that while her "male coworkers did not respect her as a security officer" throughout the course of her employment, ECF No. 1, ¶ 9, she experienced negative treatment and began to be singled "out for harassment and different treatment" after she served as a witness for a co-worker alleging sexual harassment. *Id.* at ¶¶ 9-11. Allen alleges that her co-workers began to "ignore her," "allow doors to slam shut on her," fail to "properly inform her of what was going on with the inmates" when she would arrive for her shift, micromanage her, and discipline her for conduct "that other security officers who were similarly situated but who did not participate in a protected activity were not disciplined." *Id.* at ¶¶ 11-12. As factual support for her claims of such treatment, Allen details two specific instances: (1) calling Sgt. Brown to inquire about an inmate; and (2) circumstances surrounding her missing keys. *Id.* at ¶¶ 13, 16. Allen sets forth that on or about April 7, 2021, she called "Sgt. Brown" to inquire about an inmate at the yard,

---

be synonymous. *See M&M Stone Co. v. Pennsylvania*, 388 Fed.Appx. 156, 159 n.2 (3d Cir. 2010). Thus, despite the parties' use of these terms interchangeably, the Court will utilize the term "issue preclusion" for the sake of clarity. *See id.*

[3] For purposes of assessing SCI Somerset's Motion to Dismiss, the following facts set forth in Allen's Complaint and attachments are accepted as true. *See Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

and "Sgt Brown responded, 'You are the only [expletive] person who doesn't know what they are doing!'" *Id.* at ¶ 13. Allen also sets forth two comments as factual support of her contention that her termination was due to pretextual discrimination and retaliation. *Id.* at ¶ 16. First, Allen alleges that around the time her keys went missing, she overheard a conversation between two other guards where one guard said to another, "[n]ext time you take her keys, give them to the inmates," and second, Allen alleges that she was told by an officer that "they were planning to get rid of her" because she participated as a witness in her co-worker's sexual harassment case. ECF No. 1, ¶ 15.

Allen was eventually discharged on or about July 15, 2021. *Id.* at ¶ 19. Allen appealed her termination to the State Civil Service Commission which found that she failed to establish a prima facie claim of retaliation or disparate treatment, and "failed to present evidence that" SCI Somerset's "legitimate [and] non-discriminatory reasons" "were pretextual." Commission Adjudication 30766, pp. 23-25.[4] The Commission noted that SCI Somerset's proffered reasons for Allen's termination included Allen: (1) losing her key chit and failing to file a required DC-121 report until seventeen days later; (2) losing her personal vehicle keys due to failure to appropriately secure them to her person by a key caddy; and (3) failure to "maintain control of her issued utility belt containing OC spray and handcuffs by leaving [them] unattended within the facility." Commission Adjudication 30766, pp. 23-25. Allen challenged the State Civil Service

---

[4] Allen filed the State Civil Service Commission's adjudication of the issue as part of Exhibit 1, which she attached to her Brief in Opposition to the Motion to Dismiss. ECF No. 14, Exhibit 1. However, because the Third Circuit has set forth that "it is proper for this Court to take judicial notice of decisions of an administrative agency. . ." *Furnari v. Warden, Allenwood Federal Correctional Inst.*, 218 F.3d 250, 255 (3d Cir. 2000); *see also Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015) ("We note, moreover, that courts normally can take judicial notice of agency determinations."); *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) ("[I]t is well-established that executive and agency determinations are subject to judicial notice."); *Don Lee Distributor, Inc. (Warren) v. N.L.R.B.*, 145 F.3d 834, 841 n.5 (6th Cir. 1998) ("[W]e have held that it is appropriate to take judicial notice of 'adjudicative facts' such as agency and judicial decisions, even where those decisions contain disputed statements of fact, as long as we take judicial notice for some purpose other than to take a position on the disputed fact issue."), this Court takes judicial notice of the State Civil Service Commission's adjudication. The Commission's adjudication may be found at http://sites.state.pa.us/cslegal/AdjView.aspx (input appeal number "30776", select "Angela M Allen vs. Department of Corrections Cr Smr Scy") (cited as "Commission Adjudication 30776"). The Court does not look to the State Civil Service Commission's decision to find facts but to establish the adjudication's substance.

Commission's adjudication before the Commonwealth Court of Pennsylvania, raising new evidence that allegedly suggested her termination was pretextual. ECF No. 14, pp. 1,4; *see also Allen v. State Correctional Institution at Somerset*, No. 839 C.D. 2022, 2023 WL 7521106 (Commw. Ct. Pa. Nov. 14, 2023) ("*Allen* I"). On November 14, 2023, almost one month after Allen filed her Complaint with this Court, the Commonwealth Court affirmed the State Civil Service Commission's adjudication, finding that Allen "did not prove retaliation or that her dismissal was due to discriminatory reasons." *Allen* I, 2023 WL 7521106, at *5.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In this way, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted).

At the motion to dismiss stage, the court does not address whether the plaintiff will be able to prove the facts alleged or will ultimately prevail on the merits, but instead determines if the claimant is entitled to offer evidence to support the claims. *See Maio v. Aetna, Inc.*, 221 F.3d 472,

482 (3d Cir. 2000). As such, the court must accept as true all well-pled factual allegations in the complaint and its attachments and view all reasonable inferences in the light most favorable to the plaintiff(s). *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court is not required to accept inferences that are unsupported by factual allegations in the complaint or legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

When determining the sufficiency of a complaint under the standards establish in *Twombly* and *Iqbal*, a court must: (1) "tak[e] note of the elements a plaintiff must plead to state a claim," *Iqbal*, 556 U.S. at 675; (2) identify allegations unsupported by facts that, "because they are no more than conclusions, are not entitled to the assumption of truth," *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011); and, (3) assume the veracity of well-pleaded factual allegations and proceed to "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In short, a motion to dismiss should not be granted if a plaintiff alleges facts, which taken as true, would entitle him/her to relief. *See Iqbal*, 281 F.3d at 678; *see generally Twombly*, 550 U.S. at 570.

## III.   Discussion

### A.   Issue Preclusion

"As one of its first acts, Congress directed that all United States courts afford the same full faith and credit to state court judgments that would apply in the State's own courts." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 462-63 (1982) (citing Act of May 26, 1790, ch. 11, 1 Stat. 122, 28 U.S.C. § 1738). As such, unless "there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation," *id.* at 481 (quoting *Montana v. United*

*States*, 440 U.S. 147, 164 n.11 (1979)), "the usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum." *Id.* at 485.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata'." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Although these doctrines both govern the preclusive effects of a former adjudication, they are applied in different ways." *M&M Stone Co.*, 338 Fed.Appx. at 161. Claim preclusion "instructs that a final judgment on the merits forecloses successive litigation of the very same claim," *Bravo-Fernandez v. U.S.*, 580 U.S. 5, 10 (2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)) (internal quotation marks omitted), and forecloses "relitigation of matters that should have been raised in an earlier suit [but were not]," *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984); *see also M&M Stone Co.*, 338 Fed.Appx. at 161, "whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire*, 532 U.S. at 748). Conversely, the "doctrine of issue preclusion ordinarily bars relitigation of an issue of fact or law [only if it was] raised and necessarily resolved by a prior judgment," *Bravo-Fernandez*, 580 U.S. at 10, regardless of "if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).[5] Issue preclusion "derives from the simple principle that later courts should honor the

---

[5] While issue preclusion is distinct from claim preclusion in that it bars individual issues of fact or law previously determined from being relitigated in a subsequent proceeding, it is possible for issue preclusion to bar an entire claim from being litigated in a subsequent proceeding should an issue of fact or law that was previously litigated be identical to an issue that is essential to the success of a subsequent claim; this is true regardless of whether the claim is different than that which was raised previously. *See Kremer*, 456 U.S. at 463-64, 479-80 (finding that issue preclusion barred a plaintiff from bringing a Title VII claim in federal court when he had raised a discrimination charge under state law because the elements of a successful employment discrimination claim were nearly identical such that the plaintiff could not succeed in his Title VII claim consistent with the agency's determination of his state law claim); *cf. Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 550 (3d Cir. 1996) (holding that issue preclusion did not bar plaintiff who had raised a workmen's compensation claim in an earlier proceeding from raising a Title VII claim before the district court as an evaluation of the framework of each claim indicated that each of the underlying legal issues were

first actual decision of a matter that has been actually litigated," *Burlington*, 63 F.3d at 1231 (quoting 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416 (1981)), and implicitly indicates that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *see also Dici*, 91 F.3d at 547; *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Authority*, 327 F.Supp.3d 803, 816 (E.D. Pa. 2018). Still, "[t]he party asserting issue preclusion bears the burden of proving its application to the case at hand." *Ogrod v. City of Philadelphia*, 598 F.Supp.3d at 277 (cleaned up) (quoting *Dici*, 91 F.3d at 548-49); *see also Greenway Center, Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007).

When evaluating the application of issue preclusion to a federal claim, "[f]ederal courts must give a state court judgment the same preclusive effect as would the courts of that state." *Swineford v. Snyder County, Pa.*, 15 F.3d 1258 1266 (3d Cir. 1994) (citing 28 U.S.C. § 1738). In this way, issue preclusion "not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *M&M Stone Co.*, 338 Fed.Appx. at 161 (quoting *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980)). To determine whether issue preclusion "bars relitigation of an issue previously determined by a state court, a federal court must apply state law and evaluate whether relitigation would be precluded in the courts of the state in which the initial

---

not identical). The Supreme Court detailed a subsequent claim that would be barred by issue preclusion in *Bravo-Fernandez*, 580 U.S. at 11. There, the Court discussed a case involving the robbery of six poker players by a group of masked men and noted that where the state charged a man with the robbery of one of six poker players and the jury acquitted him, the state was prevented by issue preclusion—as incorporated into the Double Jeopardy Clause—from trying the same man for robbery of a second of the six poker players as the first jury had already determined the issue of whether the accused was a part of the group of robbers. *Bravo-Fernandez*, 580 U.S. at 11 (discussing *Ashe v. Swenson*, 397 U.S. 436 (1970)).

litigation took place." *Rosemont Taxicab Co.*, 327 F.Supp.3d at 816-17; *see Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). A similar approach is to be taken in the context of a state court decision upholding a state administrative agency's determination. *See Dici*, 91 F.3d at 547-48 ("[A] federal court in a Title VII action should grant preclusive effect to a state court decision upholding a state administrative agency determination when the state court's decision would be barred by issue preclusion in subsequent actions in that state's own courts."). The Pennsylvania Supreme Court has set forth that issue preclusion will apply when:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*See Metropolitan Edison Co. v. Pennsylvania Public Utility Com'n*, 767 F.3d 335, 351 (3d Cir. 2014) (citing *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005) (cleaned up); *see also Wilmington Trust, National Association v. Unknown Heirs*, 219 A.3d 1173, 1179 (Pa. Super. Ct. 2019).

Although issue preclusion is an affirmative defense, a court may consider the preclusive effect of a state court judgment raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *M&M Stone Co. v. Pennsylvania,* 388 Fed.Appx. 156, 162 (3d Cir. 2010) (citing *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972)); *see also* Fed. Rule Civ. Proc. 8(c)(1) (listing avoidance and affirmative defenses that must be raised in response to a pleading, including res judicata). The Third Circuit has set forth that:

> In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether

issue preclusion bars that plaintiff's claims. Thus, we have held that a prior judicial opinion constitutes a public record of which a court may take judicial notice.

*M&M Stone Co.*, 388 Fed.Appx. at 162. In doing so, a court may not examine a transcript of a prior proceeding to find facts without converting a motion to dismiss into a motion for summary judgment, but a court may take judicial notice of a prior judicial opinion to establish the opinion's existence and substance. *See M&M Stone Co.*, 388 Fed.Appx. at 162.

In its Motion to Dismiss and Brief in Support, SCI Somerset chose to raise only the affirmative defense of issue preclusion, omitting any discussion as to the merits of Allen's claims. ECF Nos. 9, 10. As such, the Court will only consider the application of issue preclusion to Allen's claims.

### i.    Count I: Sex Discrimination

In her Complaint, Allen alleges that SCI Somerset discriminated against her on the basis of her sex in violation of Title VII and the PHRA. ECF No. 1, ¶ 21.[6] In response, SCI Somerset contends in its Brief in Support of its Motion to Dismiss, ECF No. 10, that issue preclusion bars Allen's claim as the "Commonwealth Court affirmed the State Civil Service Commission's ruling that the Department [SCI Somerset] did not engage in retaliation or wrongful termination based on sex discrimination." ECF No. 10, p. 7.

The Court recognizes that: (1) there was a final adjudication on the merits of Allen's disparate treatment claim,[7] (2) the parties in all relevant proceedings were the same parties in the

---

[6] Allen, as a female, contends that she is a member of a protected class under Title VII, and that she was "highly qualified for her position of security officer as she successfully completed the duties of her position." ECF No. 1, ¶¶ 28-29. Despite alleging that she was "regularly and severely harassed by [SCI Somerset] on the basis of her sex" and that "[a]fter multiple reports to her supervisors and the Human Resources department," she was "ultimately terminated . . . as a direct result of her complaints of sexual harassment and verbal abuse," *Id.* at ¶¶ 30-33, the only factual support Allen specifically set forth in her Complaint that may, even tangentially, be construed as implicating sex discrimination is Sgt. Brown's April 7, 2021 comment to Allen, where Sgt. Brown stated, "You the only [expletive] person who doesn't know what they are doing!" ECF No. 1, ¶ 13.

[7] The Commonwealth Court noted that Allen claimed her discharge was "based upon discriminatory intent and disparate treatment." *Allen* I, 2023 WL 7521106, at *2. As such, Allen's prior claim was adjudicated by the

current proceeding, and (3) the determination in the prior proceeding(s) was essential to the judgment.[8]  However, Allen contends that by alleging her termination was pretextual, she has introduced "a new issue that was not adjudicated in the previous proceeding," ECF No. 14, p. 1, and that, because this issue was not adjudicated in the previous proceeding, she did not possess a full and fair opportunity to litigate the issue. *Id.* at p. 2.  As such, the Court will undertake an analysis to determine whether the issues underlying Allen's disparate treatment claim, decided in the prior case, are identical to the issues presented here under Allen's Title VII and PHRA sex discrimination claim such that Allen's pending claims before this Court must be barred by issue preclusion before evaluating whether Allen had a full and fair opportunity to litigate the issue of pretext.

### a. Were the Issues presented by Allen's Disparate Treatment Claim Identical to the Instant Title VII and PHRA Sex Discrimination Claim?

The State Civil Service Commission evaluated Allen's claim of discrimination with reference to 71 Pa.C.S.A. § 2704, the Civil Service Reform Act, which prohibits discrimination "against an individual in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of race, gender, religion, disability or political, partisan or labor union affiliation or other non-merit factors."  Commission Adjudication 30776, p. 7.  The Commission undertook an analysis of Allen's "claims of traditional discrimination," which encompass claims of discrimination based upon gender, and found that Allen "failed to establish her removal was motivated by disparate treatment." *Id.* at pp. 7, 25.  In

---

Commonwealth Court as a disparate treatment claim. *Id.* at *5.  SCI Somerset argues Allen's current sex discrimination claim is barred by issue preclusion due to the prior adjudication of Allen's disparate treatment claim.
[8] There is no dispute between the parties as to these three issues.

deciding Allen's appeal of the State Civil Service Commission's adjudication, the Commonwealth Court likewise undertook an analysis of Allen's claims of disparate treatment utilizing the Civil Service Reform Act and held that Allen failed to establish a prima facie case of discrimination, affirming the Commission's adjudication of the matter. *Allen* I, 2023 WL 7521106, at *3, *5.

When alleging a discrimination claim under the Pennsylvania Civil Service Act, "the employee claiming discrimination in personnel actions has the burden of presenting . . . sufficient evidence that, if believed, and otherwise unexplained, indicates more likely than not that discrimination occurred." *Kunsak v. Wetzel*, No. 15-1648, 2018 WL 4357131, at *7 (W.D. Pa. Sept. 12, 2018) (quoting *Anderson v. State Civil Serv. Comm'n*, No. 159 C.D. 2015, 2016 WL 55120, at *5 (Pa. Commw. Ct. Jan. 5, 2016)) (discussing 71 P.S. §741.905(a) (current version at 71 Pa.C.S.A. § 2704)). Although, "in discrimination cases, the prima facie burden of proof is not an onerous one," *id.* (quoting *Moore v. State Civil Serv. Comm'n*, 922 A.2d 80, n.8 (Pa. Commw. Ct. 2007)), the Civil Service Commission still requires that discrimination claims clearly and concisely state the grounds of the interest of the person in the subject matter, the facts relied upon, and, the relief sought as well as specific facts including: (1) the acts complained of; (2) how treatment differs from treatment of others similarly situated; (3) when the acts occurred; and, (4) when and how the appellant first became aware of the alleged discrimination . *See id.* (quoting 4 Pa. Code § 105.12(b)-(c)).

In this Court, Allen specifically raises a claim of sex discrimination under Title VII and the PHRA. Because the Third Circuit has set forth in the context of sex discrimination that "[c]laims under the PHRA are interpreted coextensively with Title VII claims," *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006), Allen's PHRA sex discrimination claim will

"appropriately [be] analyzed under the same framework as her Title VII claim." *Wallace v. Fraternal Order of Police, Lodge No. 5*, 174 F.Supp.2d 242, 245 n.2 (E.D. Pa. 2001).

Allen alleges pretextual sex discrimination as opposed to facial sex discrimination.[9]  *See Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996) (noting the different theories of liability under Title VII).  In order to establish a prima facie case of pretextual sex discrimination, Allen must "show that: (1) she is a member of a protected class; (2) she was qualified for her former position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of unlawful discrimination," *Carroll v. Acme Truck Line, Inc.*, 992 F.Supp.2d 512, 528 (W.D. Pa. 2014) (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)); *see also Makky*, 541 F.3d at 214, or  that "members of the opposite sex were treated more favorably." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).

The issues determined by the Commonwealth Court in adjudicating Allen's disparate treatment claim are identical to those presented by the fourth element of Allen's sex discrimination claim before this Court.  Under Title VII, a claimant who sufficiently alleges the first three elements will be deemed to have established a prima facie case of sex discrimination if she sufficiently alleges either: (1) that the circumstances give rise to an inference of unlawful discrimination, *Carroll*, 992 F.Supp.2d at 528 (quoting *Sarullo*, 352 F.3d at 797); *Makky*, 541 F.3d at 214, or (2) that members of the opposite sex were treated more favorably. *Burton*, 707 F.3d at 426 (citing *Hugh*, 418 F.3d at 267).

---

[9] The Court notes that Allen does not specifically allege upon what theory her claim of sex discrimination is based. However, Allen sets forth the elements expressed in *Langley v. Merck and Co.*, 186 Fed.Appx. 258 (3d Cir. 2006) (involving a claim of pretextual racial discrimination) in alleging her claim of sex discrimination and cites to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting forth the pretext theory) as well as *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008), where the Third Circuit employed another articulation of the pretext elements. *See* ECF No. 1, ¶ 22. Thus, it is clear from the cases relied upon by Allen in alleging her prima facie case that she alleges pretextual sex discrimination.

The Commonwealth Court adjudicated the first of these issues when it found that Allen "did not establish a prima facie case of disparate treatment." *Allen* I, 2023 WL 7521106, at *5. A discrimination claim under 71 Pa.C.S.A. § 2704 may be established if "the employee claiming discrimination . . . [presents] sufficient evidence that, if believed, and otherwise unexplained, indicates more likely than not that discrimination occurred." *Kunsak*, 2018 WL 4357131, at *7 (quoting *Anderson*, 2016 WL 55120, at *5) (discussing 71 P.S. §741.905(a) (current version at 71 Pa.C.S.A. § 2704)). While this methodology eventually implicates a type of *McDonnell Douglas* burden-shifting that applies in later stages of litigation in Title VII or PHRA claims, *see Dreibelbis v. County of Berks*, 438 F.Supp.3d 304, 315 (E.D. Pa. 2020); *James v. Tri-Way Metalworkers, Inc.*, 189 F.Supp.3d 422, 441 (M.D. Pa. 2016), a petitioner under 71 Pa. C.S.A. § 2704 must first allege sufficient evidence that indicates discrimination occurred before a burden shifting analysis is undertaken. *See generally Kunsak*, 2018 WL 4357131, at *7 (explaining that once an employee is able to establish a prima facie case of discrimination, those allegations will remain determinative of the factual issues of the case if the employer is unable to provide a credible response). However, in adjudicating Allen's disparate treatment claim, the Commonwealth Court examined Allen's pleadings and found that she "did not establish a prima facie case of disparate treatment," and included no discussion as to any legitimate, non-discriminatory reasons proffered by SCI Somerset. *Compare Allen* I, 2023 WL 7521106, at *5 (where the Commonwealth Court found that Allen "did not establish a prima facie case of disparate treatment," analyzing only Allen's claims and omitting any discussion as to legitimate reasons offered by SCI Somerset in response) *with Allen* I, 2023 WL 7521106, at *4 (where the Commonwealth Court assumed Allen "established a *prima facie* case," found that SCI Somerset "provided legitimate, non-discriminatory reasons for her removal," and held that, in response, Allen "provided no evidence that th[o]se proffered

reasons were pretextual").[10]  In this way, the Commonwealth Court found that Allen failed to allege

sufficient evidence that indicated discrimination had occurred, or, in the words of Title VII that

Allen failed to sufficiently allege circumstances that give rise to an inference of unlawful

discrimination.

While the Commonwealth's adjudication of Allen's disparate treatment claim did not

explicitly decide the second issue, whether Allen's claim sufficiently alleged that members of the

opposite sex were treated more favorably, the State Civil Service Commission addressed this issue

in its adjudication of the matter.  Specifically, the Commonwealth Court addressed Allen's claims

of disparate treatment relative to Lambert, a fellow female COT, and merely mentioned her claims

of disparate treatment relative to COT Brown in passing.  *Allen* I, 2023 WL 7521106, at *5.[11]

Conversely, in the State Civil Service Commission's adjudication of the issue, the Commission

factually distinguished SCI Somerset's treatment of Brown, a male COT, from SCI Somerset's

treatment of Allen and found that Brown was not treated more favorably.   Commission

Adjudication 30776, pp. 17, 25.  In this way, the Commission adjudicated whether a member of

the opposite sex was treated more favorably than Allen.  As such, both issues of fact or law relevant

---

[10] The Court notes that even should the Commonwealth Court have incorporated a type of *McDonnell Douglas* burden shifting analysis in finding that Allen failed to allege a prima facie disparate treatment claim, a final determination by a state court that non-pretextual, just cause exists for the employee's termination may preclude a subsequent claim due to issue preclusion when the claimant in the subsequent case would have to prove that the "just cause" offered by the employer was pretextual for the claim to succeed and the issues decided by the state court are identical to the issues before the subsequent court.  *See Thomas v. Parkway West Career and Technology Center*, No. 12-cv-1867, 2013 WL 1195115, *6 (W.D. Pa. Mar. 22, 2013) (holding that issue preclusion prevented Plaintiff from forwarding claims that his termination was pretextual when a claim "under the USERRA would necessitate Plaintiff demonstrating that Defendants did not have just cause to furlough him" and the state court found just cause for Plaintiff's furlough existed); *see also Dennison v. Indiana University of Pennsylvania*, No. 22-2649, 2023 WL 8595426, at * 6 (3d Cir. Dec. 12, 2023) (At later stages of litigation than 12(b)(6), "[s]ex discrimination claims are analyzed under the *McDonnell Douglas* three-step burden-shifting framework" where: (1) a plaintiff "must establish a prima facie case of sex discrimination," (2) "[i]f she succeeds, the burden of production shifts to the defendant-appellees to advance a legitimate, non-discriminatory reasons for their actions," and (3) "[i]f they advance such a position, the burden shifts back to [the plaintiff] to prove that the nondiscriminatory explanation is merely a pretext for discrimination.").

[11] While the Commonwealth Court noted Allen's disparate treatment relative to COT Brown, the Commonwealth Court included no discussion as to whether Brown was a member of the opposite sex who was treated more favorably than Allen beyond affirming the Commission's conclusion.  *See generally Allen* I, 2023 WL 7521106, at *5.

to the fourth element of Allen's Title VII sex discrimination claim presently before this Court were conclusively adjudicated—the Commonwealth Court conclusively adjudicated the issues of fact or law relevant to the first issue in the express language of its opinion and conclusively adjudicated the issues of fact or law relevant to the second issue when it affirmed the Commission's determination which directly addressed the issue.[12]

Because the issues of law or fact decided by the Commonwealth Court and the Commission when adjudicating Allen's disparate treatment claim are identical to the issues presented here under the fourth element of Allen's Title VII and PHRA sex discrimination claim, Allen's sex discrimination claim is barred by issue preclusion because those adjudications foreclose Allen's ability to prove a required prima facie element of her sex discrimination claim. *See Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 107 ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *Wei v. Pennsylvania*, 796 Fed.Appx. 143, 146 (3d Cir. 2020) ("If a decision by a state administrative agency has been reviewed by a state court, that decision is given preclusive effect in federal court."); *see also Rosemont Taxicab Co.*, 327 F.Supp.3d at 817 n.9 ("Under Pennsylvania law, issue preclusion is not limited to the findings of a prior judicial proceeding, and a court may apply issue preclusion to the findings made in a prior adjudicative administrative proceeding.").

### b. Does Allen's "New Evidence" Prevent the Application of Issue Preclusion?

---

[12] While the Commonwealth Court did not mention SCI Somerset's treatment of COT Brown in its opinion, this matter was still adjudicated by the Commonwealth Court when it affirmed the State Civil Service Commission's determination, which included analysis as to that issue. *Commonwealth of Pennsylvania v. Brown, et al.*, 373 F.2d 771, 778 (3d Cir. 1967) ("It is settled . . . that matters pertinent to an issue before a court and which were clearly presented to it, by brief or appendix thereto, are to be taken as covered by the court's decision though not mentioned in the opinion.").

Allen sets forth in her Brief in Opposition to SCI Somerset's Motion to Dismiss that she "discovered new evidence . . . [that casts] doubt on [SCI Somerset's] original reason for terminating [her]."[13] ECF No. 14, p. 5. Specifically, Allen first alleges that this evidence suggests that her keys were stolen, not lost, as she "heard two unnamed officers state . . . [']next time you take her keys, give them to the inmates.[']" ECF No. 14, p. 5. Second, after averring that she "was terminated for not reporting the chit missing to the [c]aptain in the control room," *id.* at p. 4, Allen alleges that newly discovered evidence proves that Captain Washabaugh, who testified that Allen did not go to the control room on the evening she misplaced her key chit, was on vacation the evening in question. *Id.* at p. 4-5. As such, Allen contends that Captain Washabaugh was "not able to testify [as to] what happened . . . ." *Id.* at p. 5. Allen contends that "[t]his evidence shows that [she] was discriminated against because of her sex in witnessing the sexual harassment of her co-worker and she was terminated for this reason, not because she misplaced her keys or chit." *Id.* Thus, Allen alleges that issue preclusion should not be applied to her claims as she can demonstrate that the reason for her termination was pretextual and, in doing so, present "a new issue that was not adjudicated in the previous proceeding." *Id.* at p. 1.

"The Third Circuit has recognized a number of 'extraordinary circumstances' that warrant reconsideration of an issue that was previously decided by the Court in an earlier stage of litigation. Those circumstances include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Bosley v. The Chubb Institute*, 516 F.Supp.2d 479, 484 (E.D. 2007) (quoting

---

[13] The Court notes the existence of the following findings of fact set forth by the State Civil Service, not for the veracity of the findings but as further background for the original reasons the Commission found that SCI Somerset had in terminating Allen. In its findings of fact, the State Civil Service Commission set forth that the termination letter Allen received included the following reasons, among others, for her termination: (1) she failed to report a lost key chit and (2) she failed to report that she was missing her personal vehicle keys in addition to admitting to keeping her keys in her pocket. Commission Adjudication 30776, p. 2, ¶ 2 (citing Comm. Ex. A.).

*Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)).  These extraordinary circumstances are incorporated in the "change-in-law exception" articulated by the Supreme Court in *Herrera v. Wyoming*, 587 U.S. 329, 343 (2019).  The change-in-law exception ensures equitable administration of the law by preventing a court from giving preclusive effect to an earlier judgment when significant changes in either controlling facts or legal principles have occurred since the earlier judgment.  *See Herrera*, 587 U.S. at 343 (citing *Montana v. United States*, 440 U.S. 147, 155, 157-58 (1979)); *Commissioner v. Sunnen*, 333 U.S. 591, 599 (1948) ("[A] subsequent modification of the significant facts or a change or development in the controlling legal principles may make that [prior] determination obsolete.").  In this way, new facts may prevent the application of issue preclusion, but in order to do so, "new facts" must have material "bearing on the issue," *Campaign Legal Center v. 45Committee, Inc.*, 118 F.4th 378, 389 (D. D.C. Cir. 2024), such that they constitute "significant changes in *controlling* facts."  *Montana*, 440 U.S. at 157-58 (emphasis added).  These facts must be "new," meaning that the information became "known after the [prior] decision," *45Committee, Inc.*, 118 F.4th at 389, because it could not have previously been discovered by the party.  *See Campaign Legal Center v. Federal Election Commission*, No. 22-cv-3319 (CRC), 2023 WL 6276634, at *11 (D.C. Sept. 26, 2023).

In order for Allen's allegedly new evidence to prevent this Court from applying issue preclusion, it must have material bearing on her specific claims and be new, in that it could not have been previously discovered.  *See 45Committee, Inc.*, 118 F.4th at 389; *Federal Election Commission*, 2023 WL 6276634, at *11.  Here, Allen has raised a Title VII and PHRA pretextual sex discrimination claim.  As such, for the new evidence to prevent the application of issue preclusion, it must have material bearing as to whether Allen was discriminately terminated based upon her sex.  Assuming, arguendo, that Allen's allegedly "new" evidence has material bearing as

to pretext generally, neither piece of evidence has any material bearing specific to Allen's sex discrimination claim at issue here. Neither piece of evidence, as proffered by Allen, remotely implicates her sex and therefore, does not suggest that she was discriminately terminated due to her sex. Additionally, from Allen's own filings, it is clear that she does not assert that the new evidence was discovered after the Commonwealth Court's adjudication. Instead, both pieces of "new evidence" set forth in Allen's Brief in Opposition to the Motion to Dismiss, ECF No. 14, were present in the brief she filed with the Commonwealth Court when she appealed the State Civil Service's adjudication.[14] ECF No. 14-1, p. 9.[15] Even in Allen's Brief in Opposition to the

---

[14] In her brief to the Commonwealth Court, Allen specifically alleged that she "overhead two officers talking . . . in response to [her] problems when her car keys were claimed to be found by the metal detector" saying, "'[n]ext time you take her keys, give them to an inmate.'" ECF No. 14-1, p. 9. Additionally, Allen argued that "Shift Commander, Officer Washabaugh, was on special leave on April 26, 2021, the day Allen went to control" proving his statement "that Allen had never come to the control to ask about her chit" was false. *Id.*

[15] Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss. *Pension Benefit Guaranty Corp*, 998 F.2d at 1196; *see also Siehl v. City of Johnstown*, 365 F.Supp.3d 587, 596 (W.D. Pa. 2019) ("[C]ourts may consider matters of public record and other matters of which the court may take judicial notice" in ruling on a motion to dismiss.). "[E]xamples of matters of public record include Securities and Exchange Commission filings, *court-filed documents*, and Federal Drug Administration reports published on the FDA website." *Sturgeon v. Pharmerica Corp.*, 438 F.Supp.3d 246, 257-58 (E.D. Pa. 2020) (emphasis added) (taking judicial notice of the existence—rather than the truth of the facts asserted—of four filings by the plaintiff in a prior action against defendant in order to determine if the plaintiff's retaliation claim was precluded by a prior jury verdict). As such, the Court will look to Allen's "Brief and Exhibits Filed in the Commonwealth Court," that Allen attached as an exhibit to her Brief in Opposition to the Motion to Dismiss, ECF No. 14-1, in order to note the existence of the arguments made in Allen's brief to the Commonwealth Court and determine whether Allen had a full and fair opportunity to litigate the issue of pretext; the Court does not look to this filing for the truth of the facts asserted therein. *See Sturgeon*, 438 F.Supp.3d 246, 257-58 (recognizing that the court may take judicial notice of filings in other proceedings "to establish their existence [for the purpose of applying issue preclusion], 'and not for the truth of the facts asserted in those filings'") (citing *M & M Stone Co.*, 388 F. App'x at 162 ("In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims.")); *see also United States ex rel. Geisler v. Walters*, 510 F.2d 887, 890, n.4 (3d Cir. 1975) (taking judicial notice of briefs and petitions filed in state court, "as the United States District Court could have done"); *Brown, et al.*, 373 F.2d at 778 ("[A] federal court may take judicial notice of matters of record in state courts within its jurisdiction."); *Trustees of General Assembly of Lord Jesus Christ of the Apostolic Faith, Inc., et al. v. Patterson, et al.*, No. 21-634-KSM, 2022 WL 16944000, at *2 (E.D. Pa. Nov. 14, 2022) (taking judicial notice of court filings in state and other federal actions along with court opinions and orders in those matters as to the fact of their filing and the rulings issued by the court[s], but not as to the truthfulness of "the contentions and allegations of the parties contained therein"); *Hynoski v. Columbia County Redevelopment Authority*, 941 F.Supp.2d 547, 557 (M.D. Pa. 2013) (taking judicial notice of documents filed in the Court of Common Pleas of Columbia County, Pennsylvania); *cf. Albion Engineering Co. v. Hartford Fire Insurance Co.*, 779 Fed.Appx. 85, 90, n. 29 (3d Cir. 2019) (declining to take notice of briefs filed in the Ninth Circuit for the purpose of supporting plaintiff's argument that New

Motion to Dismiss, she cites to ECF No. 14-1, entitled "Exhibit A-Brief & Exhibits Filed in the Commonwealth Court," upon stating that she "and her attorney have discovered new evidence that two security guards [Allen] worked with gave statements which indicate that . . . Allen's keys were stolen and the chit was misplaced." ECF No. 14, p. 4. In this way, Allen's allegedly new evidence does not prevent the application of issue preclusion as it neither materially bears upon her Title VII and PHRA sex discrimination claim nor is it new in the sense that it could not have been discovered before the prior proceeding as it was, in fact, proffered by Allen in support of her pretext argument in the prior proceeding. ECF No. 14-1, p. 9.

### c. Was Allen Afforded a Full and Fair Opportunity to Litigate Pretext?

Allen contends that the issue of pretext "was not adjudicated in the previous proceeding," and, therefore, application of issue preclusion would be inappropriate as "the issue of pretext was not fully and fairly litigated in the Commonwealth Court." ECF No. 14, pp. 1, 2.

Issue preclusion "cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case." *United States ex rel. Doe v. Heart Solutions, PC*, 923 F.3d 308, 316 (3d Cir. 2019) (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)). As such, "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation," issue preclusion may not be appropriate. *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 158 (2015) (quoting *Montana*, 440 U.S. at 164, n.11). However, the requirement that a party have a full and fair opportunity to litigate the issue "is met if a party could litigate issues in the manner available in a court of record and had sufficient incentive to do so vigorously in the first proceeding." *Adelphia Gateway, LLC v.*

---

Jersey would follow California, modifying its law, as such notice would require taking judicial notice of the filings for the truth of the arguments contained therein as opposed to its existence and would thus be inappropriate).

*Pennsylvania Environmental Hearing Board*, 62 F.4th 819, 828 (3d Cir. 2023) (internal quotation marks omitted).

In adjudicating Allen's appeal, the Commonwealth Court found that Allen provided no evidence that the proffered legitimate and non-discriminatory reasons for her removal were pretextual. *Allen* I, 2023 WL 7521106, at *4. As noted above, both pieces of "new evidence" set forth in Allen's Brief in Opposition to the Motion to Dismiss, ECF No. 14, were present in Allen's brief filed with the Commonwealth Court when she appealed the State Civil Service's adjudication.[16] While the Commonwealth Court did not detail in its opinion the specific after-discovered evidence raised, aside from mentioning evidence relative to Allen's lost keys, the after-discovered evidence raised in Allen's briefing was clearly covered by the court's decision as it addressed Allen's contention that after discovered evidence should be considered. *Id.* at n. 9; *see Brown, et al.*, 373 F.2d at 777 ("It is settled . . . that matters pertinent to an issue before a court and which were clearly presented to it, by brief or appendix thereto, are to be taken as covered by the court's decision though not mentioned in the opinion.") (citing *Bingham v. United States*, 296 U.S. 211, 218-19 (1935)). The Commonwealth Court specifically "reject[e]d [Allen's] contention that [the after-discovered evidence] should be considered" because Allen failed to provide more than "boilerplate assertions of the five factors" considered when evaluating whether to re-open judgment due to after-found evidence let alone any reason why the evidence "could not [have] be[en] ascertained with due diligence." *Allen* I, 2023 WL 7521106, at *4, n. 9. In this way, Allen had the opportunity to litigate the issue of pretext in the Commonwealth Court, both generally and specifically as it pertained to her allegedly new evidence, and she possessed sufficient incentive to do so vigorously, satisfying the requirement that she have a full and fair opportunity to litigate

---

[16] *See* discussion *infra* Section (III)(A)(i)(b); *see also* ECF No. 14, p. 4; ECF No. 14-1, p. 9.

before issue preclusion may be applied. *See Adelphia Gateway, LLC*, 62 F.4th at 828. Deficiencies in pleadings filed in earlier adjudications do not suggest that a party was not afforded the requisite opportunity to vigorously litigate the issue but merely indicate that the party failed to vigorously litigate the issue when given the opportunity. *See Kunsak*, 2018 WL 4357131, at *7 (finding that Kunsak had a full and fair opportunity to litigate her claim when she was afforded an opportunity to do so before the State commission and on appeal to the Commonwealth Court but "failed to allege any additional facts or present evidence to support her claim," leading to the dismissal of her claim as unsubstantiated). Thus, the Court finds in light of the Commonwealth Court's adjudication that Allen had a full and fair opportunity to litigate the issue of pretext.

As such, the Court will GRANT SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's Title VII and PHRA sex discrimination claim.

### ii.    Count II: Hostile Work Environment

In her Complaint, Allen alleges that SCI Somerset "created an intolerable hostile work environment," ECF No. 1, ¶ 46, in violation of Title VII and the PHRA. ECF No. 1, ¶¶ 39-49. While Allen does not set forth examples of the underlying harassment referenced, Allen alleges the following in support of her hostile work environment claim: (1) Allen "was subject to harassment by [SCI Somerset] throughout the course of her employment," (2) "[t]he harassment . . . is surely indicative of a sexually hostile work environment" in that "it was sexually charged and riddled with discriminatory conduct," (3) "Allen reported this harassment . . . on multiple occasions" but no corrective action was taken, (4) "[t]he detrimental effects experienced by [Allen] . . . would . . . affect a reasonable person so situated," and (5) Allen "was consequently terminated in retaliation for [her] reports." ECF No. 1, ¶¶ 43-47. While SCI Somerset requests that this Court apply issue preclusion and dismiss all of Allen's claims with prejudice, ECF No. 10, p. 8,

SCI Somerset failed to specify how issue preclusion would bar this particular claim due to a prior adjudication of the issues of fact or law necessary to allege a prima facie claim of hostile work environment under Title VII or the PHRA beyond attaching the Commonwealth Court's decision, wherein the only reference to hostile work environment is found in a footnote where the Commonwealth Court noted cases cited by Allen in support of her retaliation claim that were "irrelevant to the matter at hand" because they pertained to hostile work environment claims. *See Allen* I, 2023 WL 7521106, at *2 n.5; ECF No. 9-2, p. 4; *see generally* ECF No. 10. As such, SCI Somerset failed to carry its burden of proving the application of issue preclusion to Allen's hostile work environment claim before this Court. *See Ogrod*, 598 F.Supp.3d at 277 (quoting *Dici*, 91 F.3d at 548-49); *see also Greenway Center, Inc.*, 475 F.3d at 147. Because SCI Somerset failed to carry its burden and declined to address the merits of this claim in its Motion to Dismiss, ECF No. 9, the Court need not conduct further analysis at this time.

Thus, the Court will DENY SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's Title VII and PHRA hostile work environment claim.

### iii.    Count III: Retaliation

In her Complaint, Allen alleges that SCI Somerset retaliated against her for engaging in protected activity by terminating her employment. ECF No. 1, ¶¶ 19, 53. Allen briefly mentions two distinct theories regarding SCI Somerset's alleged retaliation. First, Allen sets forth that she "was discharged d[ue] to retaliation . . . because [SCI Somerset] discharged [her] after learning of her participation in a sexual harassment/assault claim against [SCI Somerset]." ECF No. 1, ¶ 19. Second, Allen alleges that SCI Somerset terminated her "employment, the most severe adverse employment action, in retaliation for her reports of a sexually hostile work environment." ECF No. 1, ¶ 53. As with the other claims raised by Allen, SCI Somerset contends in its Motion to

Dismiss that issue preclusion bars Allen's retaliation claim as the "Commonwealth Court affirmed the State Civil Service Commission's ruling that [SCI Somerset] did not engage in retaliation or wrongful termination based on sex discrimination." ECF No. 10, p. 7.

The Court recognizes that, between the two proceedings—the State Civil Service Commission's adjudication and the Commonwealth Court's affirmation—that: (1) there has been a final adjudication on the merits of Allen's retaliation claim; (2) the parties in all relevant proceedings were the same parties in the current proceeding; and, (3) that the determination in the prior proceeding was essential to the judgment.[17]  However, two conditions, necessary for issue preclusion to apply, remain to be determined, namely: (1) whether the issues underlying Allen's retaliation claim decided in the prior case are identical to the issues presented here under Allen's Title VII and PHRA retaliation claim such that Allen's pending claims before this Court are barred by issue preclusion and (2) whether Allen had a full and fair opportunity to litigate her retaliation claim in the prior proceeding.  The Court will address each remaining condition in turn as they apply to each of Allen's two distinct theories regarding SCI Somerset's alleged retaliation.

In *Allen* I, 2023 WL 7521106, at *3-4, the Commonwealth Court addressed Allen's claim of retaliation relative to her participation in her co-worker's sexual harassment/assault claim against SCI Somerset.  Therein, the Commonwealth Court declined to affirm all aspects of the Commission's adjudication.  *Id.*  The Commission found that Allen had failed to allege a prima facie case of retaliation which required allegations that: "1) she engaged in protected activity; 2) the appointing authority w[as] aware of the protected activity; 3) that subsequent to participation in the protected activity, she was subject to an adverse employment action by the appointing authority; and 4) there [wa]s a causal connection between participation in the protected activity

---

[17] There is no apparent dispute between the parties as to these issues.

and the adverse employment action." *Id.* at *3 (citing *Robert Wholey Co. v. Pa. Hum. Rels. Comm'n*, 606 A.2d 982, 983 (Pa. Commw. Ct. 1992)). Comparatively, the Commonwealth Court, "assum[ed] [Allen] established a prima facie case, [and found that SCI Somerset] provided legitimate, non-discriminatory reasons for her removal, supported by substantial evidence of record." *Id.* at *4. Because the Commonwealth Court further found that Allen "provided no evidence that these proffered reasons were pretextual," the Commonwealth Court held that Allen failed to prove her discharge was motivated by a retaliatory purpose despite alleging an assumedly sufficient prima facie case.[18] *Id.*

Prima facie Title VII and PHRA claims of retaliation require facts sufficient to allege "(1) that [the employee] engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192-93 (3d Cir. 2015) (addressing Title VII, PHRA, and ADEA retaliation claims as one under the *McDonnell Douglas* framework) (cleaned up). All three elements of a prima facie case in Title VII and PHRA claims are identical to three of the four elements addressed by the Commonwealth Court in the previous adjudication. *Allen* I, 2023 WL 7521106, at *3.

Although this would typically suggest that Allen's claim of retaliation stemming from her participation in her co-worker's sexual harassment/assault claim against SCI Somerset is barred

---

[18] The Commonwealth Court's methodology similarly reflects the *McDonnell Douglas* framework that is applicable to Title VII and PHRA claims at later stages of litigation. *See Dreibelbis*, 438 F.Supp.3d at 315 ("[C]onsideration of burden-shifting is inappropriate at the motion to dismiss stage."); *James*, 189 F.Supp.3d at 441 ("If the employee establishes [a] prima facie claim, the *McDonnell Douglas* approach applies, shifting the burden to the employer to advance a legitimate, non-retaliatory reason for its conduct. . . If the employer provides such a reason, the plaintiff must then be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.").

by issue preclusion, Allen asserts a factual allegation that was not adjudicated in the prior proceeding. Namely, Allen sets forth that when she lost her keys, an "Officer said they, were planning to get rid of her because of the fact that she stood by fellow security officer, Christy Lambert, in her sexual harassment/assault case." ECF No. 1, ¶ 15 (internal quotation mark omitted). Because SCI Somerset failed to articulate how this issue was taken into account in a court of record's earlier decision, the issue as to whether this assertion supports a finding that pretextual retaliation occurred cannot be said to have been previously adjudicated by a court of record, preventing issue preclusion from barring Allen's claim of retaliation currently before this Court—relative to her participation in her co-worker's sexual harassment/assault claim against SCI Somerset. *Cf Thomas*, 2013 WL 1195115, at *6 (holding that a new factual allegation, made by an individual without supervisory or managerial authority which alone was not sufficient to establish a prima facie employment discrimination claim, did not change the applicability of issue preclusion where all of the other issues raised before the federal district court were identical to those raised in state court); *see also Witkowski v. Welch*, 173 F.3d 192, 198 n.8 (3d Cir. 1999) (contrasting claim and issue preclusion by stating that "claim preclusion gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, could have been raised" whereas "issue preclusion (or collateral estoppel), bars relitigation only of an issue identical to that adjudicated in the prior action.").

In addition to alleging that she "was discharged d[ue] to retaliation . . . because [SCI Somerset] discharged [her] after learning of her participation in a sexual harassment/assault claim against [SCI Somerset]," ECF No. 1, ¶ 19, Allen alleges that SCI Somerset terminated her "employment, the most severe adverse employment action, in retaliation for her reports of a sexually hostile work environment." ECF No. 1, ¶ 53. In its blanket request that the Court apply

issue preclusion and dismiss all of Allen's claims with prejudice, ECF No. 10, p. 8, SCI Somerset failed to specify how a prior adjudication of the issues of fact or law necessary to allege a prima facie claim of retaliation under Title VII or the PHRA would bar Allen's alternate claim of retaliation based upon Allen's filing reports of sexual harassment beyond attaching the Commonwealth Court's decision, wherein the Commonwealth Court only addressed Allen's retaliation claims relative to her participation as a witness in Lambert's sexual harassment claim. *See Allen* I, 2023 WL 7521106, at *1, 5; *see also* ECF No. 10.  As such, SCI Somerset has failed to carry its burden of proving the application of issue preclusion to Allen's alternative theory of retaliation, namely whether her termination was in retaliation for reports of sexual harassment. *See Ogrod*, 598 F.Supp.3d at 277 (quoting *Dici*, 91 F.3d at 548-49); *see also Greenway Center, Inc.*, 475 F.3d at 147.  Because Allen has introduced issues not previously adjudicated and SCI Somerset failed to carry its burden and declined to address the merits of this claim in its Motion to Dismiss, ECF No. 9, the Court need not conduct further analysis as to Allen's Title VII and PHRA retaliation claim at this time.

The Court will DENY SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's Title VII and PHRA retaliation claim.

### iv.    Count IV: Wrongful Termination in Violation of Public Policy

While SCI Somerset requests that this Court apply issue preclusion and dismiss all of Allen's claims with prejudice, ECF No. 10, p. 8, SCI Somerset failed to specify how issue preclusion would bar Allen's wrongful termination claim due to a prior adjudication of the issues of fact or law necessary to allege a prima facie claim of wrongful termination in violation of public policy beyond generally arguing that the Commonwealth Court determined that SCI Somerset did not engage in "wrongful termination based on sex discrimination," citing a portion of the

Commonwealth Court's decision wherein the court explains that Allen failed to rebut the legitimate, non-discriminatory reasons SCI Somerset provided. *See* ECF No. 10, p. 7; ECF No. 9-2, pp. 7-8; *Allen* I, 2023 WL 7521106, at *4. This generalized reference does not satisfy SCI Somerset's burden of proving the application of issue preclusion to Allen's wrongful termination in violation of public policy claim as SCI Somerset has only alleged a final adjudication of Allen's termination as it relates to sex discrimination rather than a final adjudication of Allen's termination as it relates to public policy, specifically. *See Ogrod*, 598 F.Supp.3d at 277 (quoting *Dici*, 91 F.3d at 548-49); *see also Greenway Center, Inc.*, 475 F.3d at 147. Because SCI Somerset failed to carry its burden and declined to address the merits of this claim in its Motion to Dismiss, ECF No. 9, the Court need not conduct further analysis at this time.

The Court will DENY SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's wrongful termination in violation of public policy claim.

## IV.    Conclusion

The issues of law or fact decided by the Commonwealth Court and the State Civil Service Commission when adjudicating Allen's disparate treatment claim are identical to the issues presented by the fourth element of Allen's sex discrimination claim under Title VII and PHRA. As such, the prior adjudication forecloses Allen's ability to prove a required prima facie element of her sex discrimination claim. Because: (1) the prior adjudications foreclose Allen's ability to prove a required prima facie element of her sex discrimination claim, (2) Allen failed to allege new evidence which had material bearing upon her pretextual sex discrimination claim, and (3) Allen had a full and fair opportunity to litigate the issue of pretext, Allen's sex discrimination claim under Title VII and the PHRA is barred by issue preclusion. Thus, the Court will GRANT SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's Title VII and PHRA sex discrimination claim

and will dismiss this claim with prejudice due to futility. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Thomas*, 2013 WL 1195115, at *6.

Because SCI Somerset failed to carry its burden of proving the application of issue preclusion to both Allen's hostile work environment claim and her claim of wrongful termination in violation of public policy, the Court will DENY SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's hostile work environment claim and her claim of wrongful termination in violation of public policy.

Because SCI Somerset failed to prove that the factual allegation Allen raised in support of her retaliation claim and her alternative theory of retaliation were previously adjudicated, it failed to carry its burden of proving that Allen's retaliation claim is barred by issue preclusion. Thus, the Court will DENY SCI Somerset's Motion to Dismiss, ECF No. 9, regarding Allen's Title VII and PHRA retaliation claim. An appropriate order will follow.

Date: March 31, 2025

Stephanie L. Haines
United States District Judge