**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELA ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>STATE CORRECTIONAL INSTITUTION AT SOMERSET DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | ) | Civil No. 3:23-cv-262<br>Judge Stephanie L. Haines |

# OPINION

Pending before the Court is a Motion for Summary Judgment (ECF No. 44) filed by Defendant, State Correctional Institution at Somerset Department of Corrections ("SCI-Somerset"), seeking to dismiss a Complaint in civil action (ECF No. 1) filed by Plaintiff Angela Allen ("Allen"). Allen's Complaint alleges four counts against SCI-Somerset, (1) Count I that SCI-Somerset discriminated against Allen on the basis of sex in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"); (2) Count II that SCI-Somerset created a Hostile Work Environment in violation of Title VII and the PHRA; (3) Count III that SCI-Somerset retaliated against Allen in violation of Title VII and the PHRA; and (4) Count IV that Allen was Wrongfully Terminated in violation of public policy.[1] Allen claims damages of lost wages,

[1] Allen filed a case with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter on July 19, 2023, stating that under federal law if she wishes to pursue her case in federal court, she must do so within 90 days of the letter. ECF No. 1-2 ECF No. 1, ¶ 7. Allen also states that she filed a timely charge with the PHRA. ECF No. 1, ¶ 6. Allen commenced this lawsuit on October 19, 2023.

emotional distress, anxiety, loss of reputation, humiliation, and inconvenience. She seeks relief in the form of back pay, front pay, compensatory damages, punitive damages, and costs.

## I. Introduction

### A. Procedural History

On October 19, 2023, Allen filed the Complaint (ECF No. 1) against SCI-Somerset. SCI-Somerset moved to Dismiss (ECF No. 9) on January 18, 2024, and Allen filed her Brief in Opposition (ECF No. 14). SCI-Somerset filed its Reply (ECF No. 15). On March 31, 2025, the Court issued a Memorandum Opinion (ECF No. 16) and Order of Court (ECF No. 17) finding Allen's sex discrimination claim (Count I) had been fully adjudicated in a state court proceeding and thus was precluded from further litigation and would be dismissed, but that all other claims would proceed in litigation. Shortly after the Court's ruling, SCI-Somerset answered the Complaint (ECF No. 18). A Case Management Conference was set (ECF No. 19) and later held on July 25, 2026 (ECF No. 24). The Court issued an Initial Scheduling Order (ECF No. 26) providing a time frame for discovery.

According to the Stipulation Selecting ADR Process (ECF No. 21), the Parties selected early neutral evaluation and presumably failed to reach a settlement.[2] An Initial Scheduling Order (ECF No. 26) was docketed and after several extensions a post-discovery telephone conference was held on May 12, 2026 (ECF No. 40). The Court issued a Final Scheduling Order (ECF No. 41). On July 30, 2026, SCI-Somerset filed its Motion for Summary Judgment (ECF No. 44), a Brief in Support (ECF No. 47), a Concise Statement of Material Facts ("CSMF") (ECF No. 45), and Appendix (ECF No. 46). Allen filed a Concise Statement of Material Facts (ECF No. 51), a Brief in Opposition to the Motion for Summary Judgment (ECF No. 52), a Response in Opposition

[2] There is no report of mediation docketed in this case. It is presumed any settlement discussions have failed.

(ECF No. 53), another Response in Opposition (ECF No. 55), a Third Response in Opposition (ECF No. 57), and a Response to Plaintiff's CSMF (ECF No. 56).[3] A Jury Trial Order was issued (ECF No. 60) and trial is scheduled to commence on January 5, 2027, pending resolution of this ripe Motion for Summary Judgment (ECF No. 44).

### B. Factual Background[4]

Allen was employed as a Corrections Officer Trainee ("COT") from about October 5, 2020, to about July 15, 2021. ECF No. 55, ¶ 2. There is a discrepancy between the Parties on these dates and it appears that SCI-Somerset has a typographical error providing an end date of employment on July 15, 2015, that is chronologically *before* the start date of October 5, 2020. *See* ECF No. 45, ¶¶ 2, 6. In her role as a COT, Allen was responsible for, using and maintaining various equipment and tools of the profession, properly wearing all portions of the assigned uniform, and effectively communicating with other prison staff. ECF No. 45, ¶ 8.

On February 25, 2021, Allen was evaluated at the end of Phase 2 of her training, covering dates from November 29, 2020, to February 24, 2021. She received the mark of "needs improvement for her professional appearance (she was seen without the uniform hat); for Housing Unit (she had to be reminded to lock the panel while doing rounds); and for Job Performance and Work Attitude (she needs to stop making excuses). ECF No. 45, ¶¶ 13-18. She earned an overall rating of "meets standards". ECF No. 45, ¶ 19.

Allen stated that sometime in February 2021, COT Kristy Lambert confided in Allen that Lambert was sexually harassed by a male employee. ECF No. 45, ¶ 20. Allen encouraged Lambert

---

[3] The Court notes that Plaintiff's filings are often mislabeled and her docketing is riddled with mistakes and errata. In any event, the Court has thoroughly reviewed all filings in preparing this Opinion.

[4] The facts set forth derive from SCI-Somerset's CSMF (ECF No. 45), Allen's Response (ECF No. 55), Allen's own CSMF (ECF No. 51), and SCI-Somerset's Response to such (ECF No. 56). The facts are undisputed unless otherwise noted.

to report the incident. ECF No. 45, ¶ 21. Allen was later questioned by Captains Boyer and Turner about the Lambert incident or asked to provide a written statement; the Parties disagree on this fact. ECF No. 51, ¶ 5; ECF No. 56, ¶ 5. On March 5, 2021, Allen was interviewed on speaker phone by the EEOC investigator about Lambert's EEOC claim within earshot of other SCI-Somerset employees. ECF No. 45, ¶¶ 23, 24. Allen states, but SCI-Somerset disagrees, that Allen promptly reported concerns about the non-private EEOC call. ECF No. 51, ¶ 8; ECF No. 56, ¶ 8. Allen states that after the EEOC phone call she was treated differently – staff were not as friendly and they were hiding logs from her. ECF No. 45, ¶ 25. In and around the same time period, Allen had job performance problems that were documented by SCI-Somerset and are provided on the record:

**March 8, 2021**, Plaintiff left her utility belt in the bathroom with her chit, handcuffs, and mace. ECF No. 45, ¶¶ 26, 27. Plaintiff disputes the date and says it happened on March 15, 2021. ECF No. 55, ¶ 26. Plaintiff also claimed she locked the door so that no prisoner had access, but when security video was reviewed it showed she had not locked the door. She accepted responsibility by saying she "messed up". ECF No. 45, ¶¶ 26-31; ECF No. 55, ¶¶ 26, 28. Allen received verbal counselling. ECF No. 45, ¶ 31.

Allen states that on or about **April 7, 2021**, Officer Frazier told her, and she overhead others saying, that they were planning on getting rid of Allen because of the Lambert situation. ECF No. 51, ¶ 28-30, 40; ECF No. 46-1, p. 155-56. SCI-Somerset says though Allen testified to this, she was the only witness to these comments. ECF No. 56, ¶¶ 28-30.

**April 8, 2021**, Officer Ehrhart stated that he attempted to contact Allen by phone and radio to tell her that she should only send three inmates to the barber at once. ECF No. 45, ¶ 34. Allen did not answer and stated she did not get the information. She sent four inmates to the barbershop

and gave an excuse. ECF No. 45, ¶¶ 34-37. Allen states that SCI-Somerset mischaracterizes the events and that she was treated poorly and sworn at and that her mistakes don't rise to the level of misconduct, nor were they intentional, and she accepted responsibility. ECF No. 55, ¶¶ 32, 34, 35, 37.[5]

Also on **April 8, 2021**, Sgt. Kozar told Allen that she was only to open one pie hole at a time when serving the prisoners their meals, ECF No. 45, ¶ 39, and reminded her two more times as Allen started passing out trays. ECF No. 45, ¶ 40. Allen repeatedly made the same mistake but says she delivered 80 trays correctly. SCI-Somerset states that Allen also wrongly had an inmate worker close the pie hole slots and Allen struggled to properly fill out the housing unit book and perform the inmate count. ECF No. 45, ¶ 42. Allen states she did not knowingly disobey Sgt. Kozar's instructions but that the instructions were unclear. She also denies that inmate workers closed the pie holes. ECF No. 55, ¶¶ 40, 41, 42, 45, 54. Though SCI-Somerset states during an interview she admits having inmate workers close the pie holes. ECF No. 45, ¶ 54.

Finally, Allen was relieved of her housing unit duties and was sent to the yard; she then left her utility belt unattended in the bathroom again. ECF No. 45, ¶ 32. Sgt. Walerysiak used the fieldhouse bathroom and found Allen's utility belt with handcuffs and OC Spray there. ECF No. 45, ¶ 47. Allen states that the bathroom door locked automatically and no inmates were in the bathroom. ECF No. 55, ¶ 55.

On **April 18, 2021**, Lt. Munion conducted an investigation of the April 8, 2021, incidents and recommended that Allen should receive administrative action for violations of code of ethics and violation of post orders. ECF No. 45, ¶ 56. Allen was told any further violations involving

---

[5] The Court notes that Allen's objections to SCI-Somerset's characterization of events does not coincide with the narrative provided by SCI-Somerset. For instance, Allen refers to Sgt. Kozar swearing at her about the pie hole procedure but neither the pie hole procedure nor Sgt. Kozar were mentioned in the events as portrayed by SCI-Somerset at these paragraphs.

leaving equipment behind would lead to progressive discipline up to and including termination. ECF No. 45, ¶ 59. On **May 25, 2021**, Allen was given a letter with written reprimand for violations of the Code of Ethics B9 and for violations of post orders. ECF No. 45, ¶ 60. The letter commemorated in writing her being relieved from housing unit duties on April 8, 2021, as well as her violations of post orders for mandatory accountability of issued equipment. ECF No. 46-15. Such letter also advised her in writing of what she was told at the fact finding on April 18, 2021—further violations "will" lead to progressive discipline, including termination. ECF No. 46-15; ECF No. 45, ¶ 61. Allen signed this letter acknowledging its receipt. ECF No. 45, ¶ 63.

**April 26, 2021**. After a class was held in security administration for trainees, Sgt. Slifco found a key chit left behind that belonged to Allen. ECF No. 45, ¶¶ 68-69. Allen did not report the key chit missing. ECF No. 45, ¶¶ 71. There is a disagreement about whether Allen was aware her key chit was missing and whether she tried to file a report. ECF No. 51, ¶ 23; ECF No. 56, ¶ 22. Allen said she later emailed Sgt. Slifco about the chit and Slifco said the chit was secured and placed in a desk. ECF No. 51, ¶ 24. SCI-Somerset said the Allen testified in her deposition that the email to Slifco was not answered. ECF No. 56, ¶ 24. In any event, it is the testimony of SCI-Somerset that considerable time passed from the time the key chit was lost/found and the tine that it took Allen to recognize that her key chit was missing.

**May 5, 2021**. Allen was interviewed by Lt. Munion about the lost key chit found by Sgt. Slifco and about her personal car keys that she left at the metal detector on May 5, 2021. ECF No. 45, ¶¶ 64-67. Allen stated that she was unaware that her key chit had been missing or that her personal vehicle keys were left at the metal detector. ECF No. 45, ¶¶ 66-67. Allen states that she was told not to report her key chit missing because it was found and being returned to her and claims that her car keys were not lost but taken by someone. ECF No. 55, ¶¶ 66-67. The recovery

of the car keys was announced over the intercom radio, but Allen did not respond. ECF No. 45, ¶ 73. Her keys were missing for approximately four hours without her realizing it. ECF No. 45, ¶ 77. There is disagreement about when the announcement came over the intercom. ECF No. 51, ¶ 27; ECF No. 56, ¶ 27. Lt. Munion recommended further administrative action for Allen's lack of responsibility as it applied to her losing items and failing to report them as lost. ECF No. 45, ¶ 78.

On **June 17, 2021**, Plaintiff received a COT Phase 3 evaluation covering dates from March 4, 2021, through June 17, 2021. It stated she received a written reprimand for violation of Code of Ethics B9 and had a violation of post orders for not accounting for issued equipment. The evaluation explained that she "needed improvement" for Reporting and Documentation (failing to fill out housing unit log and failing to report lost key chit). ECF No. 45, ¶¶ 92. Allen states that she was removed from the unit before she could complete the logbook and was advised she did not need to report the missing key chit. ECF No. 55, ¶¶ 91-92. Allen also received "needs improvement for Performance and Work Attitude (problems accounting for issued equipment lost in presence of inmates, fails to follow policy and take accountability). ECF No. 45, ¶¶ 93-95. There was limited positive feedback but the overall rating in Allen's Phase 3 Evaluation was "needs improvement." ECF No. 45, ¶ 98. Allen states that the violations cited by SCI-Somerset were pretext for retaliation and disparate treatment, ECF No. 55, ¶ 89, and that she was being targeted for her involvement with Lambert's EEOC claim. She claims she took responsibility for her actions. ECF No. 55, ¶ 94-95. Allen counters that though the evaluation rating is poor, it does not discount that she endured retaliation and a hostile work environment supportive of her claims. ECF No. 55, ¶ 99.

On **June 23, 2021**, Allen received a letter calling her to a **July 1, 2021**, pre-disciplinary conference (PDC) to allow her to respond to eight charges against her. ECF No. 45, ¶¶ 100-101. The meeting was conducted by Lt. Munion, who had performed the investigations of Allen's infractions, and it occurred with union representation present. ECF No. 45, ¶ 105. Plaintiff acknowledged the charges against her but denies in her pleadings that these are the reasons she was terminated. ECF No. 45, ¶¶ 108-112; ECF No. 55, ¶¶ 107-112.

In the executive session, the PDC panel found that six of the eight charges against Allen were substantiated: 4 DOC Code of Ethics violations and 2 DOC Policy violations. ECF No. 45 ¶ 112. Per a letter sent to Allen on July 15, 2021 from Superintendent Eric W. Tice, Allen was terminated from her position of COT, probationary civil servant status, with SCI-Somerset effective at 1400 hours on **July 15, 2021**, as she had been found to commit several violations following a PDC held on July 1, 2021. ECF No. 45, ¶¶ 113-114.[6]

## II. Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the record...or...showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c).

[6] Allen filed a Complaint with EEOC on June 25, 2021, two days after she was given notice of the July 1, 2021, pre-disciplinary conference. In her EEOC complaint, she states she was subject to harassment and retaliation for her testimony in Lambert's EEOC claim and was fired for her own EEOC complaint. ECF No. 45, ¶¶ 119, 120. On January 3, 2022, Allen filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC").

After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) (citing *Anderson,* 477 U.S. at 248; *Celotex Corp.,* 477 U.S. at 322-23)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue of material fact for trial. *See Celotex,* 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *See Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *See Woodside v. Sch. Dist. of Phila. Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir. 2001); *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's

claims. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

## III. Analysis

Allen's remaining claims include Hostile Work Environment at Count II; Retaliation at Count III; and Wrongful Termination at Count IV. She states that he was terminated from her position as a COT at SCI-Somerset because she was involved with an EEOC claim filed by a colleague and because she filed an EEOC claim of her own. She also states that her subpar work record is pretext for the true motives of her firing. SCI-Somerset filed its Motion for Summary Judgment (ECF No. 44) stating (1) that all remaining PHRA claims (Counts II and III) and the wrongful discharge tort claim (Count IV) are barred by Eleventh Amendment sovereign immunity; (2) that the retaliation claim (Count III) is barred by issue preclusion; and (3) that the hostile work environment claim (Count II) and the retaliation claim (Count III) fail to establish cognizable claims. The Court will address each issue in turn.

### A. Sovereign Immunity under the Eleventh Amendment

SCI-Somerset contends that Allen may not bring suit under the PHRA or bring a suit for wrongful termination because it is immune to these state claims under sovereign immunity. Allen did not assert any argument opposing SCI-Somerset's defense of immunity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits brought against state agencies and state officials in their official capacity. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir.1990). "[T]he party asserting Eleventh Amendment immunity (and standing

to benefit from its acceptance) bears the burden of proving its applicability." *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir.1995).

The Third Circuit determines whether an entity is entitled to Eleventh Amendment immunity by examining three factors: (1) the source of funding—*i.e.*, whether payment of any judgment would come from the state's treasury, (2) the status of the agency/individual under state law, and (3) the degree of autonomy from state regulation. *Wilson v. City of Philadelphia*, 177 F. Supp. 3d 885, 906–07 (E.D. Pa. 2016) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989). The factors are accorded equal weight. *See Benn First Jud. Dist. of Pa.*, 426 F.3d 233, 239–40 (3d Cir.2005). It is without argument that SCI-Somerset is a state agency entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Amendment proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity). The DOC, as an agency of the Commonwealth of Pennsylvania, and its agents and employees are entitled to Eleventh Amendment immunity for money damages. *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019).

The Court has also determined that SCI-Somerset has not waived its immunity. "As we observed in *MCI Telecommunication Corp. v. Bell Atlantic–Pennsylvania,* there are only three narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 344–45 (3d Cir. 2003). Thus, claims under

PHRA and under Pennsylvania State law (Wrongful Discharge (Count IV)) will be dismissed.[7] Plaintiff's remaining claims are Hostile Work Environment and Retaliation under Title VII, Counts II and III, respectively.

**B. Issue Preclusion of Count III (Retaliation)**

SCI-Somerset contends that the claim of Retaliation has been fully litigated before the State Civil Service Commission ("SCSC") and it was found that Allen failed to establish that her termination was motivated due to lack of temporal proximity to the events that occurred in Lambert's EEOC case. When appealed to the Commonwealth Court the findings were affirmed. Thus, the Retaliation claim is precluded from being relitigated in this Court. In the alternative, Defendant states that Allen failed to exhaust this allegation before raising it in Federal Court.

The Court construes Allen's only retort to this defense is the following statement: "Denied that the state administrative and state-court rulings control all the remaining issues. The allegation is denied because the Court's March 31, 2025, opinion is the controlling ruling in this federal case as to the remaining claims and the opinion denied dismissal of Counts II, III and IV." ECF No. 53, ¶ 10. Allen misunderstands the law and the rules of civil procedure. This Court issued a Memorandum Opinion and Order on a Motion to Dismiss based on the facts and applicable law at that stage of litigation. *See* ECF Nos. 16, 17. At this stage of litigation, the Motion for Summary

---

[7] The Court notes that the Federal Claims under Title VII are not subject to Eleventh Amendment Immunity. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) ("[W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies are necessarily limited by the enforcement provisions of s[ection] 5 of the Fourteenth Amendment. In that section, Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to s[ection] 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.") (internal citations omitted).

Judgment stage, the standard of law is different and the Court may reconsider arguments made in this light.

This Court previously considered whether the Retaliation claim was precluded by the SCSC litigation and found that it was not because two issues were raised by Allen as to the Retaliation claim that were not addressed by the SCSC. (1) This Court questioned Allen's factual assertion that an "officer said they were planning to get rid of her because of the fact that she stood by fellow security officer, Christy Lambert, in her sexual harassment/assault case. ECF No. 1, ¶ 15". ECF No. 16, p. 25. (2) The Court also questioned whether SCSC considered Allen's allegation that she was retaliated against for her own reporting of a sexually hostile work environment. ECF No. 16, p. 25. This Court stated that SCI-Somerset failed to carry its burden of proving issue preclusion of Allen's alternate theories of retaliation. ECF No. 16, p. 26.

Now SCI-Somerset provides a broader argument in support of issue preclusion. It provides that SCSC considered the testimony of Lt. Munion, which was found credible. Lt. Munion stated that he was unaware of Plaintiff's participation in COT Lambert's administrative review with EEOC and he only became aware when he was interviewed for Plaintiff's own EEOC review. ECF No. 47, p. 8. SCI-Somerset ultimately informs this Court that Allen tried to raise her "after-discovered evidence" and SCSC declined to consider the evidence because Allen had the ability to petition the SCSC to reopen the judgment to consider additional statement and she failed to do so. For this reason, the Commonwealth Court also declined to review the additional evidence. SCI-Somerset submits that SCSC and the Commonwealth Court both fully considered the issue of Retaliation for Allen's involvement in Lambert's EEOC claim and found Allen did not present sufficient evidence to prove a retaliation claim on that basis.

This Court, based on its previous analysis, still finds that issue preclusion does not apply to the Retaliation claim. Without reiterating the law as it is sufficiently laid out in its March 31, 2026, Memorandum Opinion, the two additional factual assertions, enumerated *infra* within this section, raised after SCSC and Commonwealth Court adjudication have not been fairly and fully litigated as they apply to Allen's Retaliation claim. However, as the analysis provides below, summary judgment is appropriate on other grounds.

### C. No Genuine Issue of Material Fact as to Counts II (Hostile Work Environment) and III (Retaliation)

Allen has alleged that SCI-Somerset has discriminated against her on the basis of sex under Title VII. If the plaintiff establishes a *prima facie* claim, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The defendant satisfies this burden "by introducing evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [action]." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994)). If the defendant articulates such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were pretext. *See McDonnell Douglas,* 411 U.S. at 804. A plaintiff can show pretext and defeat summary judgment by pointing to evidence from which a jury could reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Norman v. Kmart Corp.*, 485 F. App'x 591, 593 (3d Cir. 2012); *see also Burton v. Teleflex Inc.*, 707 F.3d 417, 430–31 (3d Cir. 2013). Allen has put forth two theories under which she was discriminated against.

### 1. Hostile Work Environment

> [T]he Supreme Court declared that an employer unlawfully 'discriminates' against an employee 'because of' his or her 'sex' when it perpetrates sex-based harassment that is sufficiently 'severe or pervasive' to alter the 'terms, conditions, or privileges' of his or her employment. 'Harassment which does not alter the 'terms, conditions, or privileges' of one's employment, however reprehensible it may be, does not run afoul of Title VII.' *Howard v. Blalock Elec. Service, Inc.*, 742 F.Supp.2d 681, 689 (W.D. Pa. 2010). An isolated incident can amount to a change in the 'terms, conditions, or privileges' of one's employment only if it is 'extremely serious.' *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). In order for 'an atmosphere of sexual harassment or hostility to be actionable' under Title VII, 'the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' *Pennsylvania State Police v. Suders,* 542 U.S. 129, 146–147 (2004), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). This standard incorporates both objective and subjective elements.

*Mitchell v. Miller*, 884 F. Supp. 2d 334, 376 (W.D. Pa. 2012).

Allen states that SCI-Somerset discriminated against her based on the fact that she is female, which is a protected class, and because she supported Lambert's EEOC claim and filed one of her own. Allen states that SCI-Somerset "created an intolerable hostile work environment, as it was sexually charged and riddled with discriminatory conduct that was known to the human resources department, supervisors, coworkers, and was further perpetrated by … individuals." ECF No. 1, ¶ 46. Allen specifically testified in her deposition that in February 2021, the environment changed after she encouraged Lambert to report an alleged sexual assault incident. ECF No. 46-1, p. 50-53. "How the environment changed is I went to work and I walked in and said, good morning. And not one single person looked at me. People turned their heads…. I'd get on my housing unit and the officer would just walk out and wouldn't tell me what the – what was going on with the prisoners. I didn't have a list to go by. I was basically blindsided." ECF No. 46-1, p. 50, ¶¶ 1-9. Allen stated it was a matter of a week from the time Lambert confided in her to the time the staff started treating her differently. ECF No. 46-1, p. 52, ¶¶ 1-4.

She said the negative treatment also coincided with the time that staff members Boyce, Turner, and Slifco interviewed her in relation to Lambert's allegations. ECF No. 46-1, p. 61, ¶¶ 1-3. Plaintiff states that things got worse after March 5, 2021. She stated that when she arrived to a housing unit other staff members would not report to her important facts about her work duty. ECF No. 46-1, pp. 67-71.

To establish a *prima facie* hostile work environment claim under Title VII on the basis of sexual harassment, Plaintiff must show the following: (1) Plaintiff suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position; and (5) respondeat superior liability exists. *Larochelle v. Wilmac Corporation*, 210 F. Supp. 3d 658, 682 (E.D. Pa. 2016). In determining whether a plaintiff has sufficiently made out a claim, courts must consider the totality of circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff's statement that SCI-Somerset created an intolerable hostile work environment, as it was ***sexually charged*** and riddled with discriminatory conduct that ***was known to the human resources department, supervisors, coworkers, and was further perpetrated by … individuals*** is not supported by the facts on record. Plaintiff instead describes a "freezing-out" of sorts but there is no discernable connection between the cold interactions and the fact that she is a female. Plaintiff asks the Court to recognize a connection between hostile staff behavior and her support of Lambert's sexual discrimination EEOC claim given the temporal proximity. Provided the facts of record, the Court cannot make this leap between the EEOC claims and cold behavior of staff

towards Allen and finds it is speculative at best. The Court finds no genuine issue of material fact. Therefore, Plaintiff's claim for hostile work environment fails at the outset. Allen failed to establish a *prima facie* case of a hostile work environment based on her sex. Plaintiff's allegation that based on the timing of her corroboration with Lambert's EEOC claim and the timing of poor treatment by work colleagues is basis for a sexually charged hostile work environment is unfounded and will be dismissed.

**2. Retaliation**

To establish a violation of Title VII's anti-retaliation provision, a Plaintiff must show that: (1) she engaged in conduct entitled to statutory protection; (2) SCI-Somerset responded by taking a "materially adverse" action ... against her; and (3) there was a causal connection between her statutorily-protected conduct and SCI-Somerset's "materially adverse" action. *See Mitchell v. Miller*, 884 F. Supp. 2d 334, 378 (W.D. Pa. 2012) (citing *Est. of Oliva v. Dept. of Law & Public Safety,* 604 F.3d 788, 798 (3d Cir.2010)).

Allen engaged in protected conduct when participating in Lambert's (February 2021) or her own (June 25, 2021) EEOC claims. The materially adverse action is Allen's termination on July 15, 2021. Whether there is a causal connection between Allen's involvement in the EEOC claims and her termination is at issue.[8] The Court finds Plaintiff's assertion that she overheard SCI-Somerset staff saying they wanted to get rid of Allen because of the Lambert situation, though uncorroborated on the record, is evidence that the adverse action had a causal connection to a statutorily protected right. Thus, Allen has put forth a *prima facie* case of discrimination.

---

[8] Allen asserts that her sworn testimony provides evidence of discrimination and that the Court must view the evidence in a light most favorable to the non-moving party and as such the testimony creates a genuine issue of material fact concerning her discrimination claims. ECF No. 53, ¶ 11. This broad sweeping statement by Plaintiff is not persuasive as it does not address whether Plaintiff has sustained her burden of making out a *prima facie* case with the specific facts asserted.

SCI-Somerset argues that Allen was not terminated for participation in either Lambert's or her own EEOC claim but was terminated instead "for various policy violations not limited to but including: (1) leaving her utility belt unattended and unsecured twice; (2) leaving her key chit and failing to properly report it; (3) failing to properly pass out food trays and ignoring supervisor re-direction; and (4) leaving her personal vehicle keys and failing to notice she was without them. ECF No. 47, p. 17. None of these cited violations implicates gender discrimination. SCI-Somerset also asserts that the temporal proximity between the events is not supportive of a causal connection because Lambert's case took place approximately five months before Allen was terminated. SCI-Somerset states with supporting case law that the four to five months between Lambert's EEOC case and Allen's termination does not have the temporal proximity required to satisfy the third element of a retaliation claim. ECF No. 47, p. 13 (citing *Moody v. Atlantic City Bd. of Education*, 870 F.3d 206, 221 (3d. Cir. 2017)). As to Allen's own EEOC claim, it was filed two days after SCI-Somerset scheduled the July 1, 2021, termination meeting. Thus, it is unlikely, if not impossible, that her termination was related to her own EEOC claim. To that end, Lt. Munion testified that he was unaware of Plaintiff's participation in Lambert's administrative interview with EEOC until his EEOC investigative interview for Plaintiff's complaint in October 2021, well after Allen had been terminated. ECF No. 46-24, p. 22. SCI-Somerset claims that it discharged Allen for legitimate, non-discriminatory reasons.

Allen argues that the reasons stated by SCI-Somerset are pretext because for some violations she corrected the behavior or she was told not to report missing items and then was admonished for not reporting. She alleges that many of these violations were based on misunderstandings and not done intentionally. *See* ECF No. 53, ¶¶ 5-9. In essence, she asserts that the infractions were such that they should not have been termination worthy.

The Court finds that SCI-Somerset's bases for termination is not pretext but legitimate reasons for terminating Allen. There is no issue of material fact that the events occurred as SCI-Somerset describes. Plaintiff does not deny that any of the factual incidents cited by SCI-Somerset happened, instead she tries to explain them away from her point of view and state that the infractions are not proper basis for her termination. Her explanation that the door was locked on the bathroom where she left her belt containing items that would be dangerous in the hands of an ill-intentioned prisoner does not obviate the fact that it was a serious infraction of SCI-Somerset rules. Her explanation that she was told not to report her lost key chit does not change the fact that she left it behind and did not report it missing before she was told it was found. Though she delivered 80 trays properly, it does not nullify the fact that it was a struggle to for her to comply with the proper procedures.

While Plaintiff provides an excuse or reason for every failure on the job, she has no basis on which to determine her infractions were not serious enough for termination.[9] Plaintiff's arguments against the legitimacy of her firing do not create issues of material fact. The material facts are undisputed: Allen had a documented history of poor performance in her evaluations; she had a series of serious violations of prison protocol; and, investigations were conducted and a performance conference was held resulting in her termination. The Court finds these undisputed facts provide a legitimate basis on which SCI-Somerset could fire Allen, thus, it is not pretext.

The Court still must attend to Allen's only factual allegation supportive of the causal connection for the retaliation claim – that she overheard staff saying SCI-Somerset wanted to get rid of her because of her involvement with Lambert's EEOC claim. Plaintiff overheard from other

[9] The Court notes that the EEOC investigator interviewed 40 individuals named in Allen's EEOC complaint and none of the witnesses corroborated Allen's allegations of sex discrimination. ECF No. 47, p. 17. *See also* ECF Nos. 45, ¶¶ 118-134, 46-21, pp. 12-14 (EEOC investigator found only two comparable COT's who committed infractions of a similar nature to Allen and both were terminated on their first offense.)

officers that SCI-Somerset wanted to get rid of her ever since "that Lambert shit." ECF No. 46-1, pp. 155-156.

"Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000). In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Here there is an extremely strong record of Allen's poor work performance that the Court deems indisputable. But there is also an overheard comment that SCI-Somerset wanted to terminate Allen because of her involvement with an EEOC sex discrimination claim. Based on a review of analogous caselaw, the Court finds that the stray comment made by staff that SCI-Somerset was trying to fire Allen because of her participation in EEOC claims is not sufficient to overcome the overwhelmingly legitimate reasons for her termination.

In *Parson v. Vanguard Grp.*, No. CV 15-3942, 2016 WL 3878165 (E.D. Pa. July 18, 2016), aff'd, 702 F. App'x 63 (3d Cir. 2017), a case analogous to this one in its facts, demonstrates a history of plaintiff's poor work performance but also stray comments from employees of defendant that could implicate a discriminatory motive. The *Parson* Court addressed Vanguard's motion for summary judgment on discrimination claims.

> Vanguard asserted the plaintiff provided no evidence to support an inference of racial discrimination. Plaintiff stated that his supervisor made a comment which he

> took to be racial in nature, stating, "Vanguard may not be the place for your type." Several supervisors, including Perilli, called Plaintiff by the name of another black male in the department. And Plaintiff's productivity was erroneously calculated in Vanguard's Horizon system, which his supervisors had the ability to manipulate. Together, Plaintiff argues, these facts support an inference of racial discrimination by supervisors at Vanguard. The Court agrees that Plaintiff's performance began to decline only under Rodden's supervision, who had commented on Plaintiff's "type." Construing the evidence in the light most favorable to Plaintiff, the Court also finds that supervisors calling Plaintiff the wrong name and erroneous reporting in Horizon could give rise to an inference of discrimination. *See Burdine*, 450 U.S. at 254 ("[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." (internal quotation marks omitted)). Accordingly, the Court finds that Plaintiff has presented sufficient evidence to establish a prima facie case of race discrimination. *See id.* at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous.")

*Id.* at *5.

> Second, Plaintiff states that his negative appraisals, Written Alerts, and Formal Warning occurred under the supervision of Rodden, a Caucasian supervisor, who commented that Vanguard may not be the place for Plaintiff's "type." Plaintiff implies that Rodden targeted her criticism at him because of his race and it was her negative evaluations that resulted in his eventual termination. The evidence, however, does not show how discriminatory animus was part of the decision-making process surrounding his termination. Rodden did not have any hand in the decision to terminate Plaintiff. Rodden's comment about Plaintiff's "type," made approximately eleven months prior to his termination, is unrelated to the termination decision and best characterized as a "stray remark," which does not bear great weight in a pretext analysis. *Kargbo v. Phila. Corp. for Aging*, 16 F. Supp. 3d 512, 528 (E.D. Pa. 2014) (quoting *Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994)) (defining "stray remarks" as "[s]tatements divorced from the employment decision" and noting how stray remarks "can be considered as part of the evidence of pretext, but alone are insufficient to show racial animus"). Stray remarks, in combination with evidence to discredit an employer's legitimate non-discriminatory reason, may support a showing of pretext. *Id.* As this Court will continue to discuss, however, Plaintiff has not provided sufficient evidence to disbelieve that Vanguard terminated him because of his poor performance.

*Parson v. Vanguard Grp.*, No. CV 15-3942, 2016 WL 3878165, at *6 (cleaned up). In Allen's case the record provides one "stray comment" from staff who, to the Court's knowledge, are neither supervisors, nor decision-makers, and likely had no influence on the decision to terminate Allen. The stray remark that SCI-Somerset was trying to terminate Allen for her involvement in Lambert's EEOC case, alone, can only be perceived as rumor by this Court and it does not discredit SCI-Somerset's legitimate, non-discriminatory reasons for Allen's termination. As in *Parson*, Allen has not provided sufficient evidence to disbelieve that SCI-Somerset terminated her because of poor performance.

In *Smith v. City of Allentown*, 589 F.3d 684 (3d Cir. 2009), with facts similar to Allen, the Court found Smith had failed to carry his burden.

> He exhibited performance problems as early as 2002, when Pawlowski, then director of community and economic development, noted complaints that Smith and two other directors had neglected to maintain the City's swimming pools. In late 2004, Guigere gave Smith a series of performance goals, which it is undisputed Smith failed to accomplish. When Dougherty reviewed Smith's performance in early 2006, he was concerned with problems involving the golf course, youth sports, and the annual Halloween parade. Smith nevertheless claims that Pawlowski unlawfully discriminated against him because of his age and that the proof of discrimination is, first, that Pawlowski wanted Smith to resign by Smith's birthday; second, that no one from HR participated in his termination meeting; and third, that the City did not progressively discipline him before ending his employment. None of these pieces of evidence would cause a reasonable jury to find that appellees acted with discriminatory intent when they terminated Smith.
>
> Smith has produced no evidence that Dougherty referenced Smith's fifty-fifth birthday for any reason other than providing a timetable for his resignation. In fact, Smith conceded that Dougherty could have referenced his birthday to ensure that he received an increase in his retirement benefits, which became fully accessible to Smith only when he turned fifty-five. Smith acknowledged that, aside from Dougherty's comment, he had no reason to believe that Pawlowski considered his age when deciding to terminate his employment. Dougherty's lack of personal knowledge about Smith's job performance is likewise immaterial. It is undisputed that Dougherty perused Smith's personnel file, discussed Smith's performance with

> Guigere, and consulted with Pawlowski in formulating his recommendation that Smith be terminated. Thus, it appears that Dougherty issued his recommendation based upon a thorough review of Smith's performance history with the City of Allentown. Moreover, while the City Solicitor, Assistant Solicitor, and Stephens recommended against Smith's termination, that recommendation was not binding on Pawlowski, who possessed final decision-making authority to retain or discharge at-will employees. Lastly, Smith has produced no evidence that the City had a mandatory progressive disciplinary policy or that the defendants deviated from any such policy.
>
> Smith clearly received notice of his deficient performance when Guigere established performance goals for his Bureau, if not sooner. Smith further acknowledged that he was an at-will employee and that he understood the City could terminate his employment at any time. Under these circumstances, no reasonable jury could agree that appellees terminated Smith on the basis of age discrimination. Accordingly, the District Court properly granted summary judgment in appellees' favor on his ADEA claim.

*Id.* at 691–92.

In *Johnson v. NewCourtland, Inc.*, No. CIV.A. 13-4238, 2015 WL 894320 (E.D. Pa. Mar. 3, 2015), Plaintiff conceded that she committed work infractions that could lead to her termination, however, she alleged that she was terminated because she was helping her sister, who worked at the same company, pursue a discrimination suit. The Court found that though Plaintiff was engaging in the protected activity of helping with a discrimination suit, Title VII does not preclude Defendants from disciplining Plaintiff for wrongdoing. The Court stated, "Plaintiff… has not put forth any evidence to cast doubt on or create a genuine issue of material fact as to the veracity of Defendants' basis for termination…. Faced with the relatively undisputed record in this case, the Court finds that no genuine issue of material fact as to pretext that would preclude dismissal of this claim." *Id.* at *16.

This Court finds that Plaintiff has not proven pretext through evidence from which a jury could reasonably disbelieve the employer's articulated legitimate reasons; or believe that an

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Allen's poor work performance, cited by SCI-Somerset is a legitimate non-discriminatory basis for termination. A stray comment about SCI-Somerset wanting to terminate Allen because of her involvement with an EEOC claim is insufficient evidence to disbelieve the legitimate, non-discriminatory evidence for Plaintiff's termination during her probationary period.

## IV. Conclusion

Viewing the facts in the light most favorable to Plaintiff as the nonmoving party and drawing all reasonable inferences and resolving all doubts in Plaintiff's favor, the Court finds that there are no genuine issues of material fact as to whether Plaintiff was terminated for the legitimate non-discriminatory reasons stated by SCI-Somerset. The Motion for Summary Judgment (ECF No. 44) is, therefore, GRANTED as to Plaintiff's hostile work environment and retaliation claims at Counts II and III.

Viewing the facts in the light most favorable to Plaintiff as the nonmoving party and drawing all reasonable inferences and resolving all doubts in Plaintiff's favor, the Court finds that there are no genuine issues of material fact because SCI-Somerset is protected by Eleventh Amendment Immunity and not subject to claims under the PHRA or under Pennsylvania State law of Wrongful Discharge. The Motion for Summary Judgment (ECF No. 44) is, therefore, GRANTED as to Plaintiff's discrimination claims at Counts II, III, and IV under the PHRA and for Wrongful Discharge.

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 44) is GRANTED and Plaintiff's Complaint (ECF No. 1) is dismissed with prejudice. Defendant's Motion for Stay (ECF No. 62) is DENIED as moot. The pretrial conference set for November 16, 2026, and the trial set to begin on January 5, 2027, hereby are cancelled.

An appropriate Order will be entered.

Dated: November 5, 2026

Stephanie L. Haines
United States District Judge